In the Matter of Galen MARCOTT, Debtor.

Galen MARCOTT, Plaintiff,

v.

Don EUCLIDE, Alfred Palmer, Raymond F. Meyer, Norman Dassow, Don L. Wright, Sandra Matyka, James Gorichs, Raymond H. Scott, Corliss V. Jensen and Nikolay, Jensen & Scott, Attorneys at Law, Defendants.

Adv. No. 83–0018.

United States Bankruptcy Court, W.D. Wisconsin.

June 2, 1983.

John M. Moore, Bell, Metzner & Gierhart, S.C., Madison, Wis., for defendants Palmer, Meyer, Dassow, Wright, Matyka, Gorichs and Arthur Thexton, Taylor County Dist. Atty.

Arthur Thexton, pro se.

Corliss V. Jensen, Nikolay, Jensen & Scott, Medford, Wis., for defendants Eu-

clide, Scott, Jensen and Nikolay, Jensen & Scott.

Van Buren Wake, Jr., Wausau, Wis., for plaintiff.

### MEMORANDUM DECISION ON SUMMARY JUDGMENT

ROBERT D. MARTIN, Bankruptcy Judge.

In this adversary proceeding debtor Galen Marcott asks the court to hold the above-named defendants in civil contempt for violation of the automatic stay imposed by 11 U.S.C. § 362(a), and to award damages for defendants' alleged trespass. The matter is presently before the court on the defendants' motion for summary judgment.[1] Thus the court must determine whether there are any disputed material facts, and whether defendants are entitled to prevail as a matter of law. B.R. 756 Fed.R.Civ.P. 56(c). The following facts are undisputed unless otherwise noted.

Defendant Don Euclide is a land contract vendor who obtained a judgment of strict foreclosure against the debtor in the circuit court for Taylor County on April 14, 1982. The judgment gave the debtor until August 13, 1982 to redeem the property, and if debtor failed to redeem, it required that he vacate the premises by August 15, 1982. Debtor failed to redeem but remained in possession. Debtor's wife, Joan Marcott, filed a chapter 13 petition on August 13, 1982 staying any action by Euclide. That proceeding was dismissed by this court on October 15, 1982, on the recommendation of the chapter 13 standing trustee. Euclide then obtained a writ of assistance on October 27, 1982 to recover possession of the property. Joan Marcott filed another chapter 13 petition on October 28, again staying Euclide. On January 10, 1983 Joan Mar-

---

1. All of the defendants moved for dismissal under B.R. 712, Fed.R.Civ.P. 12(b)(6) contending that debtor failed to state a claim upon which relief may be granted. Because defendants included matters outside the pleadings, affidavits and exhibits with their motion, the court notified the parties that it was treating defendants' motion as one for summary judgment. *See Chicago-Midwest Meat Ass'n v. City of Evanston,* 589 F.2d 278, 282 (7th Cir. 1978). The parties were given 20 days in which to file any additional materials in support of, or in opposition to the motion for summary judgment.

cott's latest chapter 13 petition was dismissed.

Debtor and his wife Joan Marcott were still in possession of the property on January 10, 1983 when Euclide and members of the Taylor County Sheriff's Department entered the home to remove the debtor and his family. Various members of the sheriff's department were on the premises through the night of January 10 and into the morning of January 11. At 9:20 on the morning of January 11, 1983 debtor filed his chapter 13 petition in the bankruptcy court in Madison.

Many of the facts concerning what took place while defendants were on the property occupied by the Marcotts are in dispute. In essence, debtor's complaint alleges that the defendants refused to leave the property after being told that the debtor had filed. In their answers, defendants denied they were ever asked to leave the property, and state that upon learning of the bankruptcy they did promptly leave.

■ Considering first the debtor's trespass action, the materiality of any facts and the right to prevail must be determined by application of Wisconsin law. In support of their motion, the defendants argue that the debtor, as a wrongful possessor cannot maintain a trespass action. Debtor's complaint admits to the judgment of strict foreclosure. (Paragraph 23.) Under Wisconsin law, the judgment of strict foreclosure becomes absolute if the vendee fails to redeem by paying the amount set forth in the judgment. The effect is to terminate the contract and whatever equitable interest the land contract vendee may have had in the land. *Exchange Corp. of Wisconsin v. Kuntz,* 56 Wis.2d 555, 559, 202 N.W.2d 393

(1972). Therefore, as a matter of state law, the debtor had no right to remain on the property after August 15, 1982.

■ A trespass action can only be maintained if the plaintiff has a right to possess property, or at least a right superior to that of the defendant. *See* 75 *Am. Jur.2d,* Trespass § 23. In *Laska v. Steinpreis,* 69 Wis.2d 307, 231 N.W.2d 196 (1975), the court found that evicted tenants lacked any right to possession as against their landlord, and thus could not maintain a trespass action. In the present case, debtor's right to possess was inferior to that of Euclide, holding a strict foreclosure judgment, or the sheriff's deputies operating under a valid writ of assistance. Debtor claims that the writ was never signed or filed, however a copy of the writ, signed by the Clerk of Courts for Taylor County, and file-stamped October 27, 1982 is part of the court's file in this case. There is no contention that attorneys Jensen or Scott were ever present on the premises and therefore they cannot be liable for trespass. Upon review of the pleadings, depositions, affidavits and exhibits submitted, it is apparent that there are no disputed facts which are material to debtor's trespass action and that the defendants are entitled to prevail on that claim. Therefore summary judgment against the debtor on his trespass action must be granted.

■ Debtor also asks the court to find each of the named defendants in contempt of court for violating the automatic stay imposed by 11 U.S.C. § 362(a).[2] Defendants contend that the debtor had no legal or equitable interest in the property after the judgment of strict foreclosure became absolute. If debtor has no interest in the prop-

---

**2.** 11 U.S.C. § 362(a) provides in part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to

recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate.

erty, then it is not property of the estate and not protected by the stay. Any equitable interest debtor had in the property arising out of his land contract had terminated with the strict foreclosure. Debtor was, however, still in possession. Mere possession of property has been found to be "a scintilla of equitable interest," adequate to come within the bankruptcy estate and the protection of 11 U.S.C. § 362(a)(3). *In Re Mimi's of Atlanta, Inc.*, 5 B.R. 623, 627 (Bkrtcy.N.D.Ga.1980), *In Re Lewis*, 15 B.R. 643, 645 (Bkrtcy.E.D.Pa.1981). Further, execution on the real estate is enforcement against the debtor of a pre-petition judgment, stayed by 11 U.S.C. § 362(a)(2). *See In Re Acorn Investments*, 8 B.R. 506 (Bkrtcy.S.D.Ca.1981). Having concluded that the protection of the stay was invoked by debtor's filing, the court must then turn to the question whether the defendants may have violated that stay.

There is no dispute that when Euclide and the sheriff's deputies entered the house on January 10, 1983, no stay was in effect. The question then is how quickly the defendants had to leave the house when they learned of the chapter 13 filing. Joan Marcott was on the premises packing on the morning of January 11, but the debtor had driven to Madison to file his chapter 13 petition. Debtor then telephoned Joan from Madison and told her that he had filed. There followed several telephone calls to the debtor's attorney, the bankruptcy court in Madison, and the Taylor County Sheriff's Office. The subject matter of those phone calls and what the defendants knew of the chapter 13 filing and defendants' conduct in debtor's home are all disputed. Construing the facts most favorably for the debtor, as the court must do on this motion for summary judgment, it appears that defendants did not leave upon first learning of the debtor's filing, but only after they were instructed to leave by Taylor County Judge Gary Carlson, approximately 3 hours later.

■ The bankruptcy court's power to enforce the automatic stay by finding contempt and imposing sanctions arises from 11 U.S.C. § 105(a).[3] *See In Re Norton*, 9 B.C.D. 1033, 1035 (Bkrtcy.E.D.Pa.1982), *In Re Bailey*, 20 B.R. 906, 913 (Bkrtcy.W.D.Wis.1982), 2 *Collier on Bankruptcy* ¶ 365.03 (15th ed. 1982). In addition to 11 U.S.C. § 105, 28 U.S.C. § 1481, giving the bankruptcy court "the powers of a court of equity, law and admiralty," has been cited in support of the bankruptcy court's contempt powers. *In Re Reed*, 4 C.B.C.2d 736, 11 B.R. 258 (Bkrtcy.D.Utah 1981). That this court has the power to punish for contempt does not mean that the power must be exercised. *In Re Mullen*, 8 B.C.D. 163, 14 B.R. 39 (D.C.S.D.Ohio 1981). Rather, the court may consider the equities of the case presented and the need to ensure future compliance with the court's orders.

Some courts have held that a prerequisite to a finding of contempt is a showing that the party charged had knowledge of the bankruptcy filing. *In Re Endres*, 12 B.R. 404 (Bkrtcy.E.D.Wis.1981). In the present case it is undisputed that debtor did not tell the defendants that he was going to file the bankruptcy petition. At the earliest, defendants learned of the bankruptcy when debtor telephoned Joan Marcott from Madison sometime after 9:30 a.m. January 11. The sheriff's deputies were not presented with any written evidence of the filing. On the other hand, the deputies had a writ signed by the Clerk of Court for Taylor County, directing them to remove debtor and his family from the home. Thereafter the deputies took no action other than to try to discover what they should do in light of the apparently conflicting mandates.

■ In the present case it is significant that the deputies were acting under a writ which was specifically authorized in the state court foreclosure judgment. Pursuant to 28 U.S.C. § 1481, this court lacks the power to enjoin any other court. Although the Bankruptcy Code, and specifically the protection of the automatic stay, may dis-

---

**3.** 11 U.S.C. § 105(a) provides: The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

place state law rights and remedies, the court's power is subject to limitations. Because this court could not enjoin the Clerk of the Taylor County Court from signing the writ of assistance, it would be inequitable to punish deputies who merely waited for clarifying instructions from the Taylor County judge. Therefore even construing the facts in a manner most favorable to the debtor, the court would refuse to impose sanctions for contempt against the employees of the Taylor County Sheriff's Department. As to those defendants, summary judgment is granted.

■ Considering next defendant Euclide, there are numerous disputed facts relating to his conduct after he allegedly learned of the filing. The debtor alleges that Euclide damaged telephone lines, changed locks and generally harassed Joan Marcott on the morning of January 11. In his affidavit Euclide admits that he was on the premises on the morning of January 11 and changed locks, but denied the other charges. It is toward the alleged creditor conduct that the stay is directed, therefore these facts are material and summary judgment for Euclide cannot be granted.

■ Finally, debtor alleges that Euclide was acting under the advice of attorneys Corliss Jensen and Raymond H. Scott. This court and others have found attorneys in contempt and imposed sanctions where the attorney mistakenly advised a client as to the effect of the automatic stay. *In Re Bailey,* 20 B.R. 906 (Bkrtcy.W.D.Wis.1982), *In Re Terry,* 12 B.R. 578 (Bkrtcy.E.D.Wis. 1981). The affidavit of attorney Jensen states that he was out of town from 6:30 a.m. to 9:00 p.m. on January 11, 1983 and thus took no part in any post-bankruptcy eviction proceeding. The affidavit of attorney Scott states that after learning of the bankruptcy filing he only attempted to contact Euclide at debtor's home to notify him of the bankruptcy filing, but was unsuccessful. No affidavit has been filed by the debtor responding to the affidavits of attorneys Jensen and Scott. The only basis for debtor's allegations is his complaint and

pretrial statement. Federal Rule of Civil Procedure 56(e) provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, the debtor cannot rest upon his pleadings, but must come forward with some specific facts showing a genuine issue for trial concerning contempt. *See Tilden Financial Corp. v. Palo Tire Serv., Inc.,* 596 F.2d 604, 607 (3rd Cir.1979), *Freeman v. Decio,* 584 F.2d 186, 196–97 (7th Cir.1978). 6 Moore's Federal Practice ¶ 56.11[3] (1982). The affidavits of attorneys Jensen and Scott are uncontroverted, and therefore may be taken as true statements of the facts. Taking their statements as true that they took no action after the bankruptcy was filed, there is no basis on which to hold attorneys Jensen and Scott in contempt, and summary judgment dismissing claims against them must be granted.